## DUNLEVY *v.* DUNLEVY *et al.*

*(Circuit Court, N. D. Illinois.  March 14, 1889.)*

1. EQUITY—BILL OF REVIEW.
    A bill to set aside a decree filed after the lapse of a greater period than that allowed for a writ of error or appeal from such decree cannot be treated as a bill of review. It is no excuse for the delay that, after entry of the decree, suit to enforce the same equities claimed in the first suit was brought in a state court. On such bill, errors which may have been committed in the entry of the decree cannot be inquired into.

2. SAME—PRACTICE—SERVICE OF PAPERS.
    A rule to plead to a cross-bill was presented personally to the active member of the firm of the solicitors of the defendant in the cross-bill, and service was admitted by his clerk by his directions. A clerk of such firm had told defendant in the cross-bill that he (the clerk) would not acknowledge service of the cross-bill, and, if defendant was served, such clerk would attend to it, but it did not appear that complainant in the cross-bill, or his solicitor, knew of such conversation or understanding. A non-resident solicitor had also been retained by defendant in the cross-bill, and had appeared in the case. Defendant knew of the filing of the cross-bill, and expected to be required by notice on process to make defense. *Held,* that the service was sufficient.

3. SAME.
    Though it were insufficient to attempt to compel the appearance of defendant in the cross-bill by anything less than personal service of the subpœna, and a decree on the cross-bill was entered by default, the error could be remedied only by bill of review or appeal.

4. SAME.
    Defendant's solicitor testified that he did not think a notice served on him contained a clause that a final decree would be asked for, and that he would not have admitted service had the clause been included. The letter-book of the solicitor serving the notice showed an impression copy of the notice, with the clause copied as part of it, and the solicitor testified that an impression copy was served. Two impression copies were taken. The clause was evidently written after the notice had been otherwise completed, but in the same hand, and with the same ink. *Held,* that it sufficiently appeared that the clause was in the notice served.

5. SAME—FRAUD.
    Defendant and his co-defendant in the cross-bill, an attorney, occupied hostile positions, and it was the common interest of such co-defendant and com-

plainant in the cross-bill to act together to defeat defendant. The person serving the cross-bill as the solicitor of the complainant therein testifies that complainant directed him to do so, though some years later complainant stated that he knew nothing about it, but he made no complaint against it. The cross-bill was such as would naturally be employed in the case. In a letter subsequently written by complainant he asked advice concerning the employment of his alleged solicitor in another matter. Defendant and complainant in the cross-bill lived near each other, and defendant was represented by able solicitors. *Held*, that though the co-defendant might have advised the filing of the cross-bill, and assisted in its preparation, the allegation that he fraudulently procured its filing without the knowledge of the complainant, and procured the default of the defendants and the entry of a decree therein and fraudulently imposed on the court in filing it and obtaining a decree, was not sustained.

In Equity.

Bill by Francis Dunlevy against John C. Dunlevy and others.

*H. S. Monroe*, for complainant.

*J. C. Dunlevy*, for defendants.

BLODGETT, J. This is a bill to set aside a decree entered on the 20th of December, 1878, in a cause then pending in this court, wherein the present complainant, Francis Dunlevy, was complainant, and the present defendants John C. Dunlevy and William P Kerr were defendants, and in which a cross-bill had been filed by Kerr against the two Dunlevys. It appears that in February, 1869, the complainant, Francis Dunlevy, made a contract with the defendant William P. Kerr, by which he (Dunlevy) was to acquire an interest in a tract of land then owned by Kerr, lying south of the city of Chicago, and which has since become a part of the park system of the city, and by subsequent dealings between Francis and John C. Dunlevy the control and management of this contract was assigned by Francis to John C.; and some time after this transfer to John C. such differences arose between Francis on the one part and John C. on the other part, in regard to the interest of Francis in this land covered by the contract with Kerr, and the dealings between Francis and John C. Dunlevy subsequent to the making of such contract, that on the 10th day of January, 1874, Francis Dunlevy filed a bill in this court against John C. Dunlevy, charging, in substance, that by reason of certain dealings between himself and John C. he had again become entitled to the entire benefit of the contract with Kerr, and was entitled to a reassignment from John C. to himself of the Kerr contract; that John C. had, on request, refused to make such reassignment, and refused to account for the profits which he had made from the Kerr contract; and prayed for an accounting for the profits alleged to have been made by John C. Dunlevy from his dealings with Kerr in regard to the said lands; and also that John C. Dunlevy be required to reassign said contract to the complainant, Francis Dunlevy. This bill was subsequently amended by making Kerr a party defendant, with averments charging that Kerr and John C. Dunlevy were confederating and combining together to defraud the complainant, Francis, in the premises, and praying a specific performance of the contract by Kerr. Both John C. Dunlevy and Kerr answered the bill, denying all rights and equities claimed therein by

Francis in the land in question, and on the 3d of April, 1876, Kerr, by leave of court, and after notice to the complainant's solicitors, filed a cross-bill, praying a decree adjudging that Francis had no rights or claims to the land in question, or to any part thereof, and asked for a decree canceling the said contract so made in February, 1869, between Kerr and said Francis. Francis and John C. Dunlevy were made defendants to this cross-bill, but neither of them answered, appeared, or were served with process, so far as the records show, except that the records do show that on the 21st of July, 1876, an order was entered in the cause, both parties being represented in court at the time by their respective counsel, appointing an examiner to take testimony in the case under the sixty-seventh rule, both as to the bill and cross-bill; and on the 23d of January, 1878, a rule was entered by the court requiring the defendants in the cross-bill to plead, answer, or demur to the same by the first Monday in March then next, and on the same day a copy of this rule was served on the solicitors of both defendants in the cross-bill. No plea, answer, or demurrer to the cross-bill was filed by either defendant within the time fixed by the rule, and on the 6th day of March, 1878, which was the first Monday in said month, the default of both Francis and John C. Dunlevy to the cross-bill was entered, and the matters therein charged taken as confessed and true against them. On the 14th day of May, 1878, the firm of Walker, Dexter & Smith, who had filed the bill, and who up to that time had appeared as solicitors for the complainant, Francis Dunlevy, by leave of court, withdrew their appearance as such solicitors, and the firm of McCagg, Culver & Butler entered their appearance as solicitors for said complainant; and on motion of the solicitor for Kerr the cause was referred to one of the masters in chancery of this court, to examine and report what relief Kerr was entitled to under the cross-bill; the same master having before that time been appointed examiner in said cause, to take the testimony under the sixty-seventh rule in equity. On the 15th of July, 1878, Messrs. McCagg, Culver & Butler withdrew their appearance as solicitors for the complainant, Francis Dunlevy, and Messrs. Tuley, Stiles & Lewis were substituted in their place by an order of court upon the record, and also filed their appearance as solicitors for the complainant. On the 13th of December, 1878, notice was served by the solicitor of Kerr on Tuley, Stiles & Lewis, solicitors for the complainant, stating that he would on the 16th day of the same month, at 3 o'clock in the afternoon, move the master to whom the said cause had been referred to report to the court the relief to which Kerr was entitled, and that he would also move the court to enter a decree in said cause *instanter*, and on the 20th day of December, 1878, a final decree was entered, reciting, in substance, that the cause had, on that day, been brought on to hearing on the original bill and answers thereto, and the cross-bill of Kerr taken as confessed, and upon the proofs taken in the cause, and finds that the complainant in the original bill, as amended, is not entitled to the relief he has therein prayed; that the allegations of the cross-bill have been confessed by the defendants thereto; and that the contract of February 2, 1869, between Kerr and

Francis Dunlevy has been fully performed and satisfied; and that two contracts between John C. and Francis Dunlevy, referred to in the original bill, were executed without legal consideration as to Francis Dunlevy, and in fraud of the rights of Kerr, and are null and void and mere clouds upon the title of Kerr, and the original and amended bill of Francis Dunlevy was dismissed out of court for want of equity, and decrees that said two contracts between Francis and John C. Dunlevy be canceled and decreed to be null and void.

The bill in this cause was filed on the 3d day of January, 1885, and an amended bill was filed on the 4th of March, 1885, and in this last bill, as amended, it is charged, in substance, that the decree in the former case is erroneous, and contrary to the proof as shown by the record; that said decree was obtained and caused to be entered by reason of the fraudulent practices and conduct of the defendant John C. Dunlevy; and prays that the said decree so entered in the former case on the 20th of December, 1878, may be set aside. This bill has been answered by all the defendants denying all errors in the proceedings in the original case, and denying that the decree complained of was obtained by fraud, and the case brought to hearing upon the pleadings and proofs.

As a bill of review to set aside this decree for error apparent upon the face of the record this bill can have no standing in court, because it was not filed in apt time, the authorities all agreeing that such a bill must be filed within the time in which the defeated party could prosecute an appeal or writ of error from the decree complained of, (*Thomas* v. *Brockenbrough*, 10 Wheat. 146; *Whiting* v. *Bank*, 13 Pet. 6; *Kennedy* v. *Bank*, 8 How. 604,) while here over six years had elapsed from the entry of the decree before the filing of the present bill, and no excuse is shown for the delay, even if an excuse could be considered. It is true it appears by the proof that after this decree was entered the complainant brought a suit against Kerr in a court in Ohio, to enforce the same equities claimed in the original suit, but this is no excuse for the delay which occurred between the time of the final decree in the original cause and the filing of the present bill, so that this cannot be treated in any sense as a bill of review, or the court asked to look into the errors which the court may have committed in the entry of the original decree; it being enough, I think, to say that if the decree complained of was entered without sufficient proof, or in violation of any of the rules of procedure of the court, the remedy for such errors should have been sought by an appeal, or by a bill of review filed in apt season, the case being one which the court had an undoubted right to hear and determine. Bull. N. P. 66; *Buckmaster* v. *Carlin*, 3 Scam. 106; *U. S.* v. *Arredondo*, 6 Pet. 709; *Young* v. *Lorain*, 11 Ill. 637; *Voorhees* v. *Bank*, 10 Pet. 449; *Suitterlin* v. *Insurance Co.*, 90 Ill. 483.

This bill, therefore, I think can only be treated as a bill to set aside the decree complained of for fraudulent practices on the part of the defendants in obtaining the same. The allegations or specifications of fraud, which have been argued by counsel, and upon which proof has been adduced, may be for convenience arranged under three heads:

(1) That the notice of entry of the rule to plead, answer, or demur to the cross-bill was served only on Mr. Dexter, of the firm of Walker, Dexter & Smith, the complainant's solicitors.

(2) That the notice served on Tuley, Stiles & Lewis, as complainant's solicitors, on the 13th of December, 1878, stating that Kerr's solicitor would ask for the filing of the master's report, did not contain the clause stating that complainant in the cross-bill would move the court for a final decree *instanter*.

(3) That John C. Dunlevy fraudulently caused the cross-bill to be filed without the direction or knowledge of Kerr, and procured the default of the defendants thereto and the entry of the decree thereon, while he (John C. Dunlevy) was in fact the trustee of the complainant, Francis Dunlevy, and that the said John C. Dunlevy fraudulently imposed upon the court in filing the cross-bill and in obtaining the said decree.

As to the first charge, the proof shows that the original bill was filed by Messrs. Walker, Dexter & Smith, as complainant's solicitors, and the complainant himself testifies that they were employed with his knowledge and paid from his funds by Mr. Howards Priestly, who, at that time, had some interest in, or lien on, whatever title the complainant had to the lands in question. The names of these solicitors appear upon the bill and in the proceedings of the cause up to the 14th day of May, 1878, and the proof shows, without contradiction, that the notice of the entry of the rule to plead, answer, or demur to the Kerr cross-bill was presented personally to Mr. Dexter, the active member of that firm, and service of the notice admitted by Mr. Allen, a clerk of the firm, by the direction of Mr. Dexter; and it may well be asked, I think, what more could the complainant in the cross-bill do for the purpose of serving this notice on complainant's solicitors? It is true that complainant testifies that Mr. Sibley told him (complainant) that he (Sibley) would not acknowledge service of the cross-bill, and that, if he (complainant) was served, that he (Sibley) would attend to it. Mr. Sibley nowhere appears upon the record as an attorney or solicitor in the case, but the court may say from its own knowledge, as well as from what appears in the testimony, that Mr. Sibley was up to the time of his death, some time in the spring of 1876, a clerk for Walker, Dexter & Smith, and whatever conversation or arrangement complainant had with Sibley must be presumed to have been with him as the representative of the solicitors whose names appear upon the record in complainant's behalf. This mere talk between complainant and Mr. Sibley is not enough to invalidate or defeat the notice regularly served on the solicitors whom complainant had himself clothed with authority to represent him in the case; especially when neither Mr. Kerr nor his solicitor is shown to have known of these arrangements between complainant and Sibley. The proof also shows that Mr. James R. Stanberry of Newark, Ohio, had been retained in the case by complainant, and that he had filed his written appearance among the papers in the case, but his name does not appear upon the bill, nor in any of the proceedings; and, even if it did, the service of the rule upon the resident solicitors for the complainant was enough. Walker, Dexter &

Smith did not withdraw from the case as complainant's solicitors until about four months after the service of this rule and after this default had been taken, and the fact that they admitted service on them as complainant's solicitors is enough to show that they considered themselves at that time as authorized to do so.   The proof abundantly shows that the complainant in fact knew of the filing and pendency of this cross-bill, and expected to be required by some kind of notice or process to make defense.   And if this attempt on the part of the complainant in the cross-bill to compel the appearance of the defendants thereto by anything short of personal service of the subpœna upon them was irregular or insufficient, and if the decree on the cross-bill was entered without sufficient service, it was only an error such as could be remedied either by a bill of review or an appeal in apt time.   *Kennedy* v. *Bank*, 8 How. 612.

As to the second point, the charge in the bill is that the notice served on Messrs. Tuley, Stiles & Lewis, who were then acting as complainant's solicitors, did not contain the paragraph that the court would be asked to enter a final decree in the case.   It appears from the proof that this notice was served on Mr. Stiles of this firm; and he testifies, in substance, that he does not think the notice, when served on him, contained this clause, and that he would not have admitted service if that clause had been included in the notice.   No reason is perceived why an attorney should refuse to admit service of a notice in the regular course of the proceedings in a case because it contains information that the party giving the notice will ask the court to take some steps which the attorney on whom the notice is served is not willing to consent to.   Admitting the mere fact that notice is served is not consenting to the right of the party serving it to have the order made which he is notified will be asked.   The admission is merely proof that the notice is served, not a consent that the party giving the notice is entitled to take the order he says he will ask for.   It puts the attorney on whom it is served on his guard, and calls upon him to resist the motion he is told will be made, if he has objections to it.   But the proof in this record shows to my mind quite satisfactorily that the notice, when served, did contain this clause.   The letter-book of Mr. Brown, the solicitor for Kerr, is produced, and shows an impression copy of this notice, with this clause copied as part of the original notice.   Mr. Brown, Kerr's solicitor, testifies that he served an impression copy of the notice on Mr. Stiles; and I think from the evidence of the letter-book it shows that two impressions of this notice were taken,—that is, one for the copy which was served on Mr. Stiles, and the other upon the leaf of the letter-book.   The clause in question was probably written after the body of the notice had been written out and signed by the solicitor who gave it, as this clause is written in a somewhat close or cramped hand, not as an interlineation, but as an afterthought to the notice after it had been prepared and signed, but it is evidently in the same handwriting, written obviously with the same pen and the same ink, and is copied in the letter-book with the body of the notice in such a manner as to leave no doubt upon my mind that the notice is now in the same condition it was when served on Mr. Stiles.

So that, without discussing the question as to whether a defendant who has allowed a bill to be taken as confessed against him is entitled to notice or not, it is sufficient to say that the proof satisfies me that this notice was served just as it now appears with this clause appearing in it, and that the allegation of the bill to the effect that this notice was altered by the addition of this clause after it was served is not supported by the testimony.

As to the last point, it is apparent both from the proof in this case and from the record in the former case that John C. Dunlevy occupied a position hostile to the complainant in this original cause from and before the time of the filing of the original bill. They stood at arm's length and in no relation of friendship or confidence that would justify any assumption that he was not entitled to adopt any tactics or method which would defeat the complainant's bill, allowable under the rules and practice of the court. Whatever may have been the relations between them in law and in equity, there can be no doubt from the proof that John C. Dunlevy had from the filing of this first bill assumed a hostile position towards the complainant and denied all the rights and equities claimed by the complainant, and I see nothing in the proof which would authorize the complainant, under the circumstances, to expect anything from John C. Dunlevy but hostile action at every point where he could avail himself of it to defeat the original bill. Both John C. Dunlevy and Kerr assumed by their answers positions which necessarily made it their common interest to act together to defeat the complainant. John C. Dunlevy was a lawyer, and, as the proof shows, co-operated with Kerr to defeat the complainant. Under such circumstances, what is more natural than that he should have known of the filing of this cross-bill, and perhaps advised it, if he thought it would subserve the interests of the defendants, or either of them? The allegation is that he filed this cross-bill without the knowledge of Kerr. But the fact as shown by the proof is that it was filed by Mr. Brown, as the solicitor of Kerr, and I think the preponderance of the proof is that it was with the full knowledge and approbation of Kerr. The fact that there is proof in the record showing that Kerr, two or three years after this decree was entered, stated that he knew nothing of the filing of the cross-bill, is fully explainable on the theory that he had no familiarity with technical or professional terms, and did not understand the full import of the question asked him. I cannot ignore the positive testimony of Mr. Brown that he was directed by Mr. Kerr to file this cross-bill, because, as it seems to me, it was one of the methods which would naturally have been resorted to under the circumstances disclosed in the case as a means of defending against complainant's original cause.

Much stress is laid by the complainant's counsel upon the letter of Kerr to Mr. Dobbins, of October 15, 1878, from which it is argued that up to that time Kerr had no knowledge of or acquaintance with Brown, but an examination of this letter in the light of the history of this case, and of the litigation which Kerr had been subjected to in regard to the title to this land by Phillips and others, satisfies me that he was inquir-

v.38F.no.6—30

ing of Mr. Dobbins as to the expediency of employing other attorneys to represent him in the litigation between himself and others with the park commissioners in regard to the title to his lands, and was asking Dobbins' advice as to the employment of Brown and his partner White in the litigation with the park commissioners and Phillips, and that this letter has no bearing in regard to the questions involved in this cause. As I have already said, John C. Dunlevy, being a lawyer, and being interested in this controversy, may have not only advised the filing of the cross-bill, but had something to do with its preparation, Mr. Brown being a young lawyer, but the proof leaves no doubt in my mind that Kerr had either clothed Brown with such general power as authorized him to file the cross-bill in the exercise of his discretion as a means for defending and protecting Kerr's interests, or that he had special directions from Kerr to file the cross-bill, and that there is no good ground for assuming that it was fraudulently prepared and filed, or imposed upon the court. It is true, the grounds taken by the cross-bill might not have been sustained had the case been resolutely contested, and the complainant's rights under the proof fully discussed and presented to the court by counsel, but, instead of doing this, the defendants, in the cross-bill, allowed it to be taken as confessed against them, thereby in effect admitting all the allegations contained in the cross-bill, and which had been set forth quite at length in the answers of both Kerr and John C. Dunlevy. And I fail to see much force in the contention on the part of the complainant that this cross-bill was filed without the knowledge or concurrence of Kerr, so long as Kerr himself, or those who now represent him, he being dead, do not complain.

But it is strenuously urged in argument that John C. Dunlevy imposed upon the court, and obtained an unconscionable decree by the instrumentality of this cross-bill, of which, it is insisted, he is the sole author. The reply to this is that the complainant was represented on the record by able and astute solicitors, whose duty it was to see that the court was not imposed upon to the complainant's prejudice, and who were amply capable of ascertaining when leave was asked of the court, on notice to them, to file this cross-bill, whether the solicitors who proposed to file the cross-bill were authorized so to do or not, if such information was of value to them in the case. Then was the time to have challenged the authority of Mr. Brown to act for Mr. Kerr. The complainant and Kerr both lived in Ohio, and, as I gather from the proof, at no great distance from each other, and the fact whether Brown was acting by Kerr's authority might easily have been ascertained at the time; and failure to ascertain and inform the court that it was being imposed on in the premises at the time of the concurrence ought, it seems to me, to silence complainant at so late a day as this. In fact the cross-bill contains nothing except the prayer for affirmative relief, which was not contained in the answers of both Kerr and John C. Dunlevy to the original bill.

The complainant may have had a meritorious case, and the equities may have been wholly with him both upon the original and the cross-

bill, but, if so, he was guilty of such negligence in attending to his case that he cannot now escape the consequences of his neglect by allegation of fraud unsupported by proof. To set aside this decree upon the proof adduced would, it seems to me, establish a dangerous precedent imperiling the stability of all judicial proceedings and make litigation practically interminable. The bill is dismissed for want of equity.